On the trial the defendant admitted he had repaired a stand, erected in the river Roanoke to catch fish, and that he had fished there. (489) It was stated by the plaintiff's counsel that this action was *Page 393 
brought for the purpose of trying the right of fishing amongst the islands at the falls. The plaintiff deduced his title as follows: First by a grant from the Governor to Griffith for thirty-seven small islands; Griffith conveyed to P. Johnston, and she to the plaintiff. Also he produced a State grant for these islands, rocks and stands, issued under the act of 1787. He also produced a grant for an adjacent tract, the boundaries of which included one bank of the river. His counsel stated that the stand in question was in the middle of the river; that the plaintiff had a title to these islands, rocks and stands prior to 1787; also a title under the act of 1787, and a title to one of the banks by another grant.
The defendant's counsel rested his defense on the long possession the defendant had of this stand prior to the State grant; and that as the river above the falls was not navigable, the bed thereof, and the right of fishing, belonged to the proprietors of the adjoining lands on each side. He then gave evidence of the antiquity of this stand, and that the rock where it is has been rendered an excellent place for fishing, and stands two hundred yards from the islands, and on the south side of the river.
The counsel for the plaintiff grounded his argument on the following points: Observing that this rock or stand, as it was not opposite to any island claimed by the plaintiff, may render the judgment to be given in this case less decisive of the general question respecting the islands and stands adjacent to them than was at first intended, he proposed first to consider how the common law stood, and what right the plaintiff had, prior to the grant of 1787, as to which he sued. The soil or bed of a navigable river belong to the public. Doug., 429; 1 Mo., 105. And the correct idea of a navigable river is one which ebbs and flows, so far as it ebbs and flows. Doug., 427, 441; Cowp., 86. Yet, notwithstanding the general right is in the public in navigable rivers, a private man may acquire a right to a free fishery (4 Com., 448; 3 Term, 253; 4 Burr., 2162), and hence it follows that even in navigable rivers or arms of the sea one of our citizens may acquire an exclusive right of fishing by a grant from the State. Whoever is the owner of the soil or bed of the river has the exclusive right of fishing; and that ownership of the soil or bed of the river may be granted by the State, and has been conveyed to us under the grant of 1787. This secures the exclusive right of fishing to the grantee. 2 B. Com., 40; 1 Inst., 122. In this (490) country there is no such thing as title by prescription, and, therefore, it cannot be pretended that a title may be acquired by it to the overturning of our grant. 1 Inst., 122, note 7. A right, as it is sometimes acquired in England, by long usage, against the owner of the soil, cannot apply here. F. N. B., 200. And then there remains no other *Page 394 
means of acquiring an exclusive right of fishing but by a title derived under the owner of the soil (5 Burr., 2814), and this the defendant does not pretend to.
Under the directions of the Court, the jury gave a verdict for the plaintiff.
NOTE BY REPORTER. — This case ex relatione, and I have been informed that the judgment of the Court (WILLIAMS, and MACAY, JJ.) proceeded upon the ground that the rocks in the river above the surface of the water were vacant property, and the subjects of our entry laws.
Cited: McKenzie v. Hewlett, 4 N.C. 615. *Page 396 
(492)